THE PEOPLE OF THE STATE OF NEW YORK ex rel. TOWN OF SCARSDALE, Appellant, *v.* THE PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, SECOND DISTRICT, et al., Respondents.

Railroads — grade crossings — expense of carrying highway over railroad by bridge — town in which grade crossing is situated must pay expense, although approach to bridge is within another town.

Where a grade crossing of a highway by a railroad company is discontinued and the highway carried over the grade under the provisions of the Railroad Law (formerly section 62 now section 91) the expense thereof, so far as it is chargeable to the locality, must be borne wholly by the town making the petition and in which the grade crossing is situated, although the approach to the bridge is within another town. (Cons. Laws, ch. 49.)

*People ex rel. Town of·Scarsdale* v. *Public Service Comm.,* 173 App. Div. 164, reversed.

(Argued November 23, 1916; decided January 9, 1917.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered June 14, 1916, which affirmed, on certiorari, two orders of the public service commission of the state of New York for the second district.

The facts, so far as material, are stated in the opinion.

1

*William Cravath White* for appellant. The legislature in section 94 of the Railroad Law has decreed that twenty-five per centum of the expense of making changes to an existing grade crossing in accordance with the provisions of section 91 shall be borne by the municipal corporation within which such grade crossing existed. The "expense" there referred to must necessarily include the entire cost of making all the changes directed to be made by the public service commission. The work done in Scarsdale, having been performed under the order of the public service commission, must be regarded as a part of the general undertaking. (L. 1913, ch. 749; L. 1915, ch. 240; *Matter of N. Y. C. & H. R. R. R. Co.,* 136 App. Div. 756.)

*Frank D. Briggs* and *Joseph B. Thompson* for respondents. The ruling of the Appellate Division, not only in its conclusion but in the reasons given, is correct and should be sustained by this court. (*Matter of Melenbacker* v. *Village of Salamanca,* 188 N. Y. 370; *Matter of Erie R. R. Co.,* 208 N. Y. 486; *Matter of N. Y. C. & H. R. R. R. Co.,* 200 N. Y. 121; *Matter of B. & A. R. R. Co.,* 64 App. Div. 257; 170 N. Y. 619.)

COLLIN, J. The facts essential to the statement and consideration of the questions presented are: In July, 1910, the public service commission for the second district, upon a petition of the New York Central and Hudson River Railroad Company filed in June, 1905, with its predecessor, the board of railroad commissioners, ordered that a grade crossing of a highway by the petitioning railroad company, located in the town of Greenburgh, Westchester county, should be discontinued and the highway carried over the grade of the railroad in accordance with designated plans and specifications. The railroad company carried out the order, completed the work and paid the expenses of the construction, before April 18, 1914. It submitted to the town of Greenburgh a state-

ment of the expenditures, charging the town with twenty-five per centum of them. The town thereupon presented to the commission its petition, which alleged that the easterly approach to the bridge carrying the highway above and over the tracks of the railroad was wholly within the town of Scarsdale which should pay the twenty-five per centum of the cost of the work done in it, and requested that the commission hear and determine the question. In August, 1914, the commission, by its order, charged the town of Scarsdale with twenty-five per centum of the cost of the approach within it, and subsequently denied a rehearing and affirmed the original order. The Appellate Division, under a writ of certiorari, affirmed the orders and from the order of affirmance the town of Scarsdale presents this appeal.

We will determine, primarily, whether or not the town of Scarsdale is under any liability on account of the alteration of the crossing. The highway was crossed by the railroad at grade within the town of Greenburgh, or, as stated by the brief of the respondents, the grade crossing "was wholly in the town of Greenburgh and was about one hundred and thirty-five feet west of the Bronx River, which is there the dividing line between the two towns." The easterly approach to the bridge carrying the highway as altered over and above the tracks of the railroad is in the town of Scarsdale. The statute by which exclusively the town of Scarsdale can be charged is constituted of the sections of the Railroad Law which related to the crossings of highways by railroads at grade. Those sections were, originally, 60 to 69, inclusive, of the Railroad Law and were enacted by chapter 754 of the Laws of 1897. Section 60 related to crossings of highways by new railroads and became section 89 of the consolidated Railroad Law. (Laws of 1910, chap. 481; Cons. Laws, chap. 49.) Section 61 related to the crossings of railroads by new highways and became section 90

of the consolidated law. Section 62 related to the alteration of existing grade crossings, became section 91 of the consolidated law, and contained the authority for the present proceedings. Among other things it provided: "The mayor and common council of any city, the president and trustees of any village, the town board of any town within which a street, avenue or highway crosses or is crossed by a steam surface railroad at grade, or any steam surface railroad company, whose road crosses or is crossed by a street, avenue or highway at grade" might petition the board of railroad commissioners to order alterations or changes relative to the crossing; the commissioners should thereupon take the action of, among other things, giving personal notice "to said petitioner, the railroad company, the municipality in which such crossing is situated" and to designated landowners of the hearing to be had, and after notice and hearing should determine what alterations or changes, if any, should be made, and communicate the determination " to all parties to whom notice of the hearing in said proceeding was given, or who appeared at said hearing by counsel or in person." The section has been subjected to amendments, the last of which became a law April 16, 1914 (Chapter 378). No amendment except that substituting the public service commission for the board of railroad commissioners (Laws of 1909, chapter 153) is material in the present consideration. A scrutiny of the section makes indubitable the conclusion that the municipality "within which" the grade crossing to be altered or eliminated "is situated," in the instant case, the town of Greenburgh, is the only municipality which may petition for the alteration, the only one to be personally notified of the hearing and of the decision of the commission, in fine and in fact is constituted the only municipality interested as a party in instituting and participating in the proceeding or interested in or affected by the result and sequent order.

Section 63 provided that "the municipal corporation in which the highway crossing is located, may, with the approval of the railroad company," acquire by purchase if it could, otherwise by condemnation, lands, rights or easements required for the purpose of carrying out the provisions of sections 60, 61 and 62. It became section 92 of the consolidated law. It also was subjected to amendments. (Laws of 1899, chap. 226; Laws of 1909, chap. 153; Laws of 1913, chap. 744.) In so far as it was applicable to section 62 or a proceeding under it, the words, "the municipal corporation," manifestly, could designate the municipality only, which under section 62 was a party to the proceeding. The legislature lawfully could create such municipality its representative to acquire land for a public highway. Section 64, which became section 93 of the consolidated law, has not any bearing upon the present question. Section 65 contained the provision: "Whenever, under the provisions of section sixty-one of this act, a new street, avenue or highway is constructed across an existing railroad, the railroad corporation shall pay one-half and the municipal corporation wherein such street, avenue or highway is located, shall pay the remaining one-half of the expense of making such crossing above or below grade; and whenever a change is made in an existing crossing in accordance with the provisions of section sixty-two of this act, fifty per centum of the expense thereof shall be borne by the railroad corporation, twenty-five per centum by the municipal corporation, and twenty-five per centum by the state. * * * and in all cases, except where the entire expense is paid by the railroad corporation, the expense of construction shall be paid primarily by the railroad company, and the expense of acquiring additional lands, rights or easements, shall be paid primarily by the municipal corporation wherein such highway crossings are located. * * * Upon the completion of the work and its approval by the board of railroad commissioners, an

accounting shall be had between the railroad corporation and the municipal corporation, of the amounts expended by each with interest, and if it shall appear that the railroad corporation or the municipal corporation have expended more than their proportion of the expense of the crossing as herein provided, a settlement shall be forthwith made in accordance with the provisions of this section." This became section 94 of the consolidated law. Amendments to it have been enacted, of which some are recent. (Laws of 1913, chap. 744; Laws of 1914, chap. 378; Laws of 1915, chap. 240.) In 1913 (Laws of 1913, chap. 744), the language just quoted, as changed by prior amendments, was, in part, changed. It became: "Whenever under the provisions of section ninety (61) of this chapter a new * * * highway or road is constructed across an existing railroad, the railroad corporation shall pay one-half and the municipal corporation having jurisdiction over such * * * highway * * * shall pay the remaining one-half of the expense of making such crossing above or below grade; and whenever a change is made as to an existing crossing in accordance with the provisions of section ninety-one of this chapter, fifty per centum of the expense thereof shall be borne by the railroad corporation, twenty-five per centum by such municipal corporation and twenty-five per centum by the state, * * * and in all cases, except where the entire expense is paid by the railroad corporation, the expense of construction shall be paid primarily by the railroad company, and the expense of acquiring additional lands, rights or easements shall be paid primarily by the municipal corporation having jurisdiction over the * * * highway * * *." In respect of the question here under consideration, the changes in the remaining part of the quoted language are immaterial. In 1915 (Laws of 1915, chap. 240), the words "such municipal corporation," in the provision relating to a change in an existing crossing, were

rechanged to the words "the municipal corporation." The sections following section 94, former section 65, are irrelevant here.

The meaning and effect of the statute, in its application to this case, is plain.    The town of Greenburgh must bear twenty-five per centum of the expense of the change as to the existing crossing.    The words "having jurisdiction over the (or such) street, avenue, highway or road," following the words "the municipal corporation," do not give rise to an uncertainty or ambiguity.    In the original enactment of section 60, they were used and have not in their substance been changed therein.    They are apt and exact in a proceeding authorized by section 89 or 60 or by 90 or 61 which does not relate to an existing crossing or an existing location of a crossing.    They had no relation to a proceeding authorized by section 62 until May 26, 1913, the time of the taking effect of chapter 744 of the laws of that year.    That chapter substituted them in section 92 or 63 for the words "in which the highway crossing is located" and in section 94 or 65 for the words "wherein such street, avenue or highway is located" and for the words "wherein such highway crossings are located."    It was the legislative thought that the substituted words would fulfill the purpose of those omitted and the needs of each of the sections 89, 90 and 91.    They were intended to be, in their application, referable and subservient to the language of the section which defined the jurisdiction for and authorized the particular proceeding in which they were invoked. Likewise the words "such municipal corporation" or "the municipal corporation," as used in the provision of section 94 apportioning the expenses of a change to an existing crossing, are referable to section 91 and designate the municipal corporation which that section constitutes the representative of the people of the state and a party to and participant in the proceeding from its inception.

The legislature was wholly free to devise and adopt,

within the Constitution, a system for the elimination of grade crossings and impose the costs as it chose. In imposing the costs of altering an existing crossing upon the town in which it is, no rule of law or equity was violated, no unreasonable thing done. The courts should accept the statute as enacted.

Our reasoning and conclusion as stated make unnecessary the consideration of the other question argued.

The order of the Appellate Division should be reversed, and the orders of August 4, 1914, and of November 10, 1914, of the public service commission should be annulled, with costs in the Appellate Division and this court.

CHASE, CUDDEBACK, HOGAN, CARDOZO and POUND, JJ., concur.

Order reversed, etc.